IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| EDDIE CURRY, | ) Civil Action No. 0:05-2054-JFA-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GUARDIAN INDUSTRIES CORPORATION, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |
| | ) |

Plaintiff, Eddie Curry ("Curry") filed this action on July 20, 2005. He alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] Defendant, Guardian Industries Corp. ("Guardian") filed a motion for summary judgment on July 17, 2006. Curry filed a memorandum in opposition to summary judgment on August 25, 2006. Guardian filed a reply on September 1, 2006.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7.

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF

1. Guardian manufactures flat glass used in architectural and mirror applications.

2. Curry is an African-American male who follows the Muslim faith. He was hired by Guardian on August 19, 2002 to work in Guardian's Richburg, South Carolina plant. He was employed as a packer on the lower line, which meant he packed glass (for shipment) that was sent down a conveyer belt at the end of the production process.

3. Guardian has a written Harassment/Discrimination Policy which Curry acknowledged receiving on August 19, 2002. Defendants' Exs.[2] E and F.

4. Greg Warren ("Warren") was Curry's line supervisor, Shawn Panther ("Panther") was Curry's shift manager, and Lance Clarke ("Clarke") was Guardian's Human Resources Manager. All three are Caucasian males.

5. From August 2003 to October 2003, Plaintiff questioned management at least five times about the way African-Americans were treated on the job as to promotional opportunities and privileges granted to Caucasians and not to African-Americans. He also complained about certain employees drinking alcohol and smoking in the workplace (in violation of workplace rules). Complaint, Paras. 10-11; Curry Dep. 74-77, 79-81.

6. Curry also complained in October of 2003 about certain employees drinking alcohol and smoking in the workplace against workplace rules.

---

[2] "Defendants' Ex. __" refers to exhibits to Defendants' Motion for Summary Judgment.

7. Tim Smalls, a Caucasian male, worked on Curry's shift and also reported to Panther.

8. Curry claims that on November 15, 2004, Smalls approached him and asked if he was a racist. Smalls indicated to Curry that he had heard Curry use the word "nigger". Smalls reported the incident to Panther. Curry followed Smalls into Panther's office, denied using the "n" word, and Panther indicated to Curry that he knew Smalls was lying. On November 17, 2004, Curry was called into Clarke's office at which time he was asked about the situation and told he was suspended and a hearing would be held the next day. Curry met with Clarke and Panther on the next day and after approximately ten minutes Curry was terminated. Curry Dep. 62-65, 71; Plaintiff's Opp. Mem. at 2-3.[3]

9. The Harassment/Discrimination Policy prohibits discrimination based on race. The policy provides that all violations will be investigated promptly and thoroughly. It further provides that if, after an investigation, Guardian believes an employee has violated the Harassment/Discrimination Policy, the Employee will be subject to corrective action or discipline ranging from training or counseling to immediate discharge from employment. Defendants' Ex. E.

---

[3]Guardian presents a different set of facts, as follows. On November 8, 2004, Smalls reported to Panther that Curry had used the "n" word when Smalls approached Curry to help with a work project. Smalls told Curry that he did not like the use of the term and was particularly sensitive to it because he had bi-racial nieces. Curry responded that he could use the term because he was black and indicated that he did not care that Smalls objected to the term. Panther investigated the matter, made notes of his conversation with Smalls, talked with Curry, and talked with Warren. Clarke also talked about the matter with Smalls and two other employees, Anthony Foster ("Foster") and Michelle Killian ("Killian"). Foster and Killian confirmed that they had heard Curry use the "n" word in the past and Foster said he heard Curry use it that day. Clarke met with Curry, who denied making the racial slur and asserted that other employees were prejudiced because of Curry's religion. Upon completion of the investigation, Curry was provided a Performance Review Hearing as set forth in Guardian's policies. Defendants' Motion for Summary Judgment at 1-2.

4

10. Curry was terminated by Guardian on November 17, 2004. He claims he was not allowed the opportunity to defend himself at his hearing, and he was not told the reason for his termination.

11. Guardian asserts that Curry was terminated for using a racial slur in violation of its Harassment/Discrimination Policy.

12. Curry filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC") in January 2005, alleging discrimination based on race and retaliation. Defendants' Motion for Summary Judgment, Ex. G. He received a Right to Sue notice from the EEOC on June 14, 2005. Complaint, Para. 12.

## MOTION FOR SUMMARY JUDGMENT

Curry alleges that he was terminated based on his race in violation of Title VII.[4] He also claims that he was terminated in retaliation for complaining about allegedly unlawful practices at Guardian.[5] Guardian contends that it is entitled to summary judgment because: (1) Curry fails to

---

[4] Curry complains about a general failure to promote African-American employees and appears to claim that he was not promoted to the job of cutter, but has not alleged specific facts concerning a failure to promote him to any specific opening.

[5] Curry also alludes to claims based on his religion. He, however, did not assert any claim based on religion in his Complaint. Further, he did not check the box marked "RELIGION" in the "CAUSE OF DISCRIMINATION BASED ON" section of his Charge. Generally speaking, this court does not have subject matter jurisdiction under Title VII of claims omitted from the EEOC administrative charge. Dennis v. County of Fairfax, 55 F.3d 151, 156-57 (4th Cir. 1995). However, an employee's claims in this court are not strictly limited by the allegations of the EEOC charge, but rather by the scope of the EEOC investigation which can reasonably be expected to result from the charge of discrimination. King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976); EEOC v. General Elec. Co., 532 F.2d 359, 362 (4th Cir. 1976). In other words, a claim omitted from the administrative charge can be maintained in a Title VII complaint only where the claim is
(continued...)

5

establish a prima facie case of discriminatory discharge; (2) it has articulated a legitimate, nondiscriminatory reason for Curry's discharge; (3) Curry fails to show pretext; (4) even if Curry could show that Guardian's proffered justification is false, Curry fails to show an intent to discriminate; and (5) Curry fails to establish a prima facie case of retaliation.

  A.  <u>Disparate Treatment</u>

Curry alleges that he was terminated from Guardian based on his race. Guardian contends that Curry fails to establish a claim for discrimination.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

  (1)  he is a member of a protected class;

  (2)  he was qualified for his job and his job performance was satisfactory;

---

[5](...continued)
"reasonably related to the allegations and claims in the administrative charge or, if disclosed, the omitted claim could reasonably be expected to follow from the administrative investigation based on the deficient administrative charge." <u>Nicol v. Imagematrix, Inc.</u>, 767 F. Supp. 744, 753 (E.D.Va. 1991). In <u>Nicol</u>, Judge Ellis engaged in a thorough discussion of this issue and concluded the factual allegations contained in the narrative of the administrative charge must be analyzed to determine whether a judicial claim is within the scope of the administrative charge of discrimination. Review of the Charge reveals that Curry did not discuss his religion or any claims based on religion in the narrative portion of his Charge.

>     (3)    he was subjected to an adverse employment action; and
>
>     (4)    the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1286 (4th Cir.1985); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.), cert. denied, 516 U.S. 870 (1995); McDonnell Douglas, 411 U.S. at 802. McDonnell Douglas provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

>     (1)    Prima Facie Case
>
>            The parties do not appear to dispute that Curry has established the first (that he is a member of a protected class) and third (that he suffered the adverse action of termination) prongs of his prima facie case. Guardian appears to dispute that Curry has established the fourth prong[6] (the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination) and perhaps the second prong[7] (satisfactory performance) of his prima

---

[6] Curry asserts that he has met the fourth prong because Caucasian employees used the "n" word and were not terminated.

[7] In a footnote, Guardian writes that Curry received disciplinary warnings for absences during his employment and there were issues about his conduct that surfaced during the investigation. Defendants' Motion for Summary Judgment at 7.

facie case. The company, however, then concedes that (for purposes of summary judgment only) Curry has established a prima facie case. See Defendants' Motion for Summary Judgment at 8.

        (2)        Legitimate, Non-discriminatory Reason/Pretext

Guardian has articulated a legitimate, nondiscriminatory reason for its actions, that Curry was terminated for violating Guardian's discrimination policy. Curry contends that the reason given for his termination is pretextual because: (1) he did not use the "n" word; (2) people used the "n" word throughout the plant, yet no disciplinary action was ever taken against them; and (3) he was never given a fair investigation or hearing as mandated by Guardian's policy. He also argues that he has shown discriminatory intent based on Guardian's history of discriminating against African-American employees, which he complained about on a regular basis.

In the light most favorable to Plaintiff, he has presented sufficient evidence that a jury could find Guardian's reason for his termination to be pretextual. First, Curry has consistently denied having used the "n" word to Smalls. Curry also testified that he had not used the "n" word since he became a Muslim over twenty years ago. See Curry Dep. 61-62, 65-66. In the "FACTS" section of its summary judgment motion Guardian provides that when Curry met with Clarke, Curry denied making a racial slur. Although Guardian contends that Smalls was the victim of the racial slur, it has presented no affidavits or deposition testimony from him. No affidavits or deposition testimony have been presented from Foster who allegedly overheard the conversation and Killian, who allegedly heard Curry use the racial slur in the past. In his affidavit, Clarke contradicts both the investigative notes (Defendants' Exs. B and C) and the facts presented by Guardian (in the "Facts" section of its motion for summary judgment) by stating that during his investigation and during the hearing, Curry never denied using a racial slur. Clarke Aff. (Defendants' Ex. J), Paras. 10 and 12.

8

Curry has presented testimony from employee Troy McCrory ("McCrory") that the use of the "n" word was common and occurred in front of persons in a supervisory capacity, but that no disciplinary action was taken against any of those employees. McCrory also stated that he never heard Curry use the "n" word. McCrory Dep. 17-18, 28. Employee Dexter Pendergrass stated that Curry complained about the use of the "n" word at Guardian. Pendergrass Dep. 25. McCrory stated that Smalls did not use the "n" word but said "look at that black boy pack that glass." McCrory Dep. 25.

Curry also asserts that two Caucasian employees used the "n" word and were not terminated (or even disciplined). He claims that Billy Gene (a Caucasian employee)[8] stated "don't ask mother fucking niggers" in Curry's presence and the presence of supervisor Warren. Curry Dep. 97. Curry also claims that Warren called Robert Barnes, an African-American male, a "dumb ass nigger." Curry Dep. 100-101.[9]

There is also a question of pretext as to the hearing. It is not clear exactly what process was required under Guardian's policies. Guardian, however, repeatedly asserts that Curry was given a hearing. Clarke's affidavit, however, appears to imply that he had already decided to terminate Curry prior to the hearing. Clarke Aff., Para. 11 ("when it was reported that Mr. Curry left the

---

[8] In their reply memorandum, Guardian contends that "Billy Gene" is a nickname for an African-American employee named Robert Graham. They have, however, provided nothing to support this assertion.

[9] In its response memorandum, Guardian asserts that W. L. Harkey, a Caucasian male, was terminated (approximately two months prior to Curry's termination) for using the "n" word. Defendants' Response Memorandum at 3. Harkey's name, however, is not included in Clarke's response to SCHAC's request for information which purportedly lists all employees discharged by Guardian from January 1 to December 31, 2004. Defendants' Ex. H.

9

meeting with his supervisor and immediately went to Smalls and used the term again and in a threatening manner, I decided that Mr. Curry would be terminated.").

B.  Retaliation

Curry alleges that Guardian retaliated against him (by terminating him) for objecting to unlawful employment practices. Guardian contends that Curry cannot establish a claim for retaliation because he fails to meet the first and third prongs of his prima facie case.

To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

1)  the employee engaged in protected activity;[10]

2)  the employer took some adverse employment action against the employee; and

3)  a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII); and Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)(Title VII and Equal Pay Act). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the

---

[10]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Curry fails to establish a prima facie case of retaliation because he has not established a causal connection between his alleged protected activities and his termination. The Fourth Circuit has held that a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). Generally, however, the passage of time tends to negate this inference. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, (2001) (per curiam) (citing cases); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998). Here, Curry fails to establish a causal connection based on proximity alone as the last of his alleged protected activity occurred (in October 2003) more than a year prior to his termination. See, e.g., Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C.1992)(concluding that the passage of nearly a year precluded an inference of causal connection); Parrott v. Cheney, 748 F. Supp. 312 (D.Md.1989) (even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), aff'd per curiam, 914 F.2d 248 (4th Cir.1990).

In his memorandum in opposition to summary judgment, Curry argues that he has established a causal connection because he continuously complained. Plaintiff's Opp. Mem. at 12. The deposition testimony (Curry Dep. 76) to which he cites, however, fails to support his assertion. Further, in his Complaint, Curry specifically claims that he engaged in the alleged protected activity of complaining about promotions and equal treatment from August to October 2003. Complaint, Paras. 10 and 17. He also alleges that he complained about other employees drinking alcohol,

11

smoking, and cursing in the workplace in October 2003. Complaint, Paras. 11 and 18. As noted above, all of this alleged protected conduct occurred over one year prior to Curry's termination.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 28) be denied as to Plaintiff's first cause of action (race discrimination) and granted as to Plaintiff's second cause of action (retaliation).

                Respectfully submitted,

                s/Joseph R. McCrorey
                United States Magistrate Judge

December 8, 2006
Columbia, South Carolina